IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

**UNITED STATES OF AMERICA,**

v.  **CRIMINAL ACTION NO. 4:17-cr-100**

**DARRYL MARSHALL SEAY,**

**Defendant.**

## MEMORANDUM OPINION & ORDER

Before the Court is Defendant Darryl Seay's Motion to Suppress. Defendant moves this Court to suppress all physical evidence seized as a result of what he alleges was an unconstitutional search and seizure of a bag, and, specifically, a firearm that law enforcement discovered. ECF No. 17. He also seeks to suppress all statements made following the alleged illegal discovery. *Id.*

On October 16, 2017, Defendant was indicted on one count for being a Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1). ECF No.1. Defendant filed this Motion to Suppress on November 29, 2017. The Government filed a response in opposition, ECF No. 18, and the Defendant filed a reply, ECF No. 20. On January 10, 2018, the Court held a hearing on this matter and ruled on the motion from the bench ECF No. 30. For the reasons stated on the record and discussed below, Defendant's Motion to Suppress is **DENIED IN PART AND GRANTED IN PART**. The firearm is admissible, but any statements Defendant made subsequent to discovery of the firearm are inadmissible.

1

# I. BACKGROUND

On October 27, 2016, officers of the Hampton Police Department were dispatched to the Spring Hill Suites in Hampton, Virginia in response to a trespassing complaint. Upon arriving at the hotel, hotel staff informed officers that Devin Bracey ("Ms. Bracey") was no longer welcomed on the premises because she repeatedly switched rooms and had behaved in an aggressive and confrontational manner towards staff members. Officers went to Ms. Bracey's room to escort her from the room and premises. When officers arrived at the room, the occupants refused to open the door for approximately six minutes. Officers advised Ms. Bracey and Defendant that they had been asked to leave the premises and no longer had rights to the room. Ms. Bracey and Defendant packed their belongings and exited the room. Defendant left the room with a clear, plastic bag. After leaving the room, officers began to search the room and recovered a glass smoking device/crack pipe and gun ammunition in the toilet. Upon finding these items, officers ordered Defendant and Ms. Bracey back into the room and officers continued to search the room. Officers recovered additional contraband items, including four "push pods" and a metal spoon with burn marks and apparent cocaine residue.

Officers separated Defendant and Ms. Bracey, read them *Miranda* rights, and individually interviewed them in the hotel bathroom. An officer began searching the bags that Defendant and Ms. Bracey had placed on the beds while Defendant was in the bathroom for his interview with officers. Inside the plastic bag, officers removed a red jacket and discovered a handgun that matched the ammunition found in the hotel toilet. After the search, both suspects were placed in handcuffs and taken to the police station. Subsequent to Defendant's arrest, Defendant made several statements to the officers about the firearm found in the plastic bag and his knowledge about the possession of the firearm.

On February 24, 2017, a Special Agent of the Bureau of Alcohol, Tobacco, Firearms, and Explosives, examined the firearm recovered from the bag, and determined it had been manufactured in Utah and had travelled in interstate commerce to Virginia. Additionally, a criminal history check revealed that Defendant had previously been convicted of a felony.

## II. LEGAL STANDARD

In deciding a motion to suppress, the district court is empowered to make findings of fact, and conclusions of law. *United States v. Stevenson*, 396 F.3d 538, 541 (4th Cir. 2005) (citations omitted). "At a hearing on a motion to suppress, the credibility of the witness and the weight to be given the evidence, together with the inferences, deductions and conclusions to be drawn from the evidence, are all matters to be determined by the trial judge." *United States v. McKneely*, 6 F.3d 1447, 1452-53 (10th Cir. 1993); *see United States v. Massey*, 257 F. App'x 662, 664 (4th Cir. 2007); *Columbus-Am. Discovery Group v. Atl. Mut. Ins. Co.*, 56 F.3d 556, 567 (4th Cir. 1995). As a general rule, the burden of proof is on the defendant who seeks to suppress the evidence. *United States v. Dickerson*, 655 F.2d 559, 561 (4th Cir. 1981). Once the defendant establishes a basis for his suppression motion, the burden shifts to the government. *United States v. Matlock*, 415 U.S. 164, 177-78 n.14 (1974).

## III. DISCUSSION

### A. Whether The Search And Seizure Of Defendant's Bag Violated The Fourth Amendment

Defendant's first contention is that law enforcement seized and searched his bag without a warrant, and therefore violated the Fourth Amendment. *See* ECF No. 17. As a result, Defendant argues the firearm should be suppressed because police officers discovered the firearm based on an illegal seizure and search. *Id.* In opposition, the Government argues that at the time of the search, there was probable cause to arrest Defendant, and the subsequent search of the bag was

therefore conducted incident to a lawful arrest. ECF No. 18 at 4. Finally, the Government argues in the alternative that the search was justified as a safety precaution pursuant to an investigatory stop of Defendant. *Id.* at 8. Having reviewed the parties' filings and arguments, the Court finds that the search and seizure of Defendant's bag violated the Fourth Amendment.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The United States Supreme Court ("Supreme Court") has held that "the Fourth Amendment protects people, not places." *Katz v. United States*, 389 U.S. 347, 351 (1967). Accordingly, a search under the Fourth Amendment occurs when the government invades a person's "constitutionally protected reasonable expectation of privacy." *Id.* at 360–61, (Harlan, J., concurring). A warrantless search and seizure is "per se unreasonable under the Fourth Amendment subject only to a few specifically established and well-delineated exceptions" to the warrant requirement. *Id.* at 357. In examining a Fourth Amendment unreasonable search claim, the Court must first determine whether there is a reasonable expectation of privacy in the area searched, and if so, whether the search is reasonable. *See United States v. Rusher*, 966 F.2d 868, 873–74 (4th Cir. 1992).

**1. Defendant Had No Reasonable Expectation Of Privacy In Hotel Room**

The Court finds Defendant had no reasonable expectation of privacy in the hotel room at the time Hampton police officers entered because the hotel terminated the occupancy. Generally, a guest in a hotel room has a reasonable expectation of privacy. *Stoner v. California*, 376 U.S. 483, 490 (1964). However, this expectation is not unlimited. On the contrary, a guest does not have a reasonable expectation of privacy in his hotel room after his rental period has terminated. *United States v. Jackson*, 585 F.2d 653, 658 (4th Cir.1978); *see also United States v. Rahme*, 813

4

F.2d 31, 34 (2d Cir.1987) ("[W]hen a hotel guest's rental period has expired or been lawfully terminated, the guest does not have a legitimate expectation of privacy in the hotel room.").

Here, the hotel staff terminated Defendant's occupancy of the room, and therefore his expectation of privacy also terminated when officers entered. *See* Hr'g Tr. at 7-8.

### 2. Police Officers Had Probable Cause To Arrest Ms. Bracey And Defendant

The Court also finds that officers had probable cause to arrest Ms. Bracey and the Defendant.

Probable cause is an "objective standard" and analyzes the "totality-of-the circumstances." *See Illinois v. Gates*, 462 U.S. 213, 230 (1983); *United States v. Gray*, 137 F.3d 765, 769 (4th Cir. 1998). "In dealing with probable cause, ... as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Brinegar v. United States*, 338 U.S. 160, 175 (1949). Thus, seemingly innocent activity, though not conclusive of probable cause, "may 'provide the basis for a showing of probable cause' when considered in the context of all of the surrounding circumstances." *United States v. Thomas*, 913 F.2d 1111, 1116 (4th Cir.1990) (quoting *Illinois v. Gates*, 462 U.S. 213, 244 n. 13 (1983)). An officer has probable cause for arrest when, at the time the arrest occurs, the facts and circumstances within the officer's knowledge would warrant the belief of a prudent person that the arrestee had committed or was committing an offense. *Beck v. Ohio*, 379 U.S. 89, 91 (1964).

In this case, there was probable cause to arrest Ms. Bracey for possession of narcotics. Officers discovered drug paraphernalia that included a glass pipe with suspected cocaine residue, and push rods and metal spoons wrapped in women's underwear. *See* Hr'g Tr. at 28, 38, 115-16. Moreover, officers verified with hotel management that the room had been cleaned, and that the

Defendant and Ms. Bracey were the first to occupy the room following this cleaning. *Id.* at 45. The Court also heard testimony that the occupants delayed answering the door and took an estimated five to six minutes to open the door for officers. *Id.* at 9. Considering these facts and the "totality of the circumstances," the Court finds there was probable cause to arrest Ms. Bracey for possession of narcotics.

Second, the Court also finds there was probable cause to arrest Defendant for possession of ammunition.[1] At the hearing, the Court heard testimony that upon entering the room, officers observed the Defendant leaving the bathroom with a clear plastic bag. *Id.* at 55-56, 75. Shortly after, officers observed ammunition in the toilet. *Id.* 19-21, 26. Officers learned that Defendant was a convicted felon having served seven to eight years for drug related offenses. *Id.* at 31. Considering the totality of the circumstances and the facts present, the Court finds there was probable cause to arrest Defendant for being a convicted felon in possession of ammunition. *See* Va. Code Ann. § 18.2-308.2 (West 2017) ("It shall be unlawful for any person who has been convicted of a felony . . . to knowingly and intentionally possess any firearm or ammunition for a firearm . . . .").

Given that there was probable cause to arrest both Ms. Bracy and Defendant, the Court must next determine the scope of the seizure, if any, of Defendant's property.

### 3. The Search Was Not Conducted Incident To A Lawful Arrest

The Government argues that the search of the "plastic bag" that contained the firearm was conducted incident to the lawful arrests of Defendant and Ms. Bracey, thus meeting an

---

[1] Defendant argues that officers did not have probable cause to arrest him for possession of narcotics based on his mere presence in the hotel room. *See* ECF No. 20 at 2. However, the Government does not argue that there was probable cause to arrest Defendant based on possession of narcotics, but instead argues there was probable cause to arrest him for the ammunition found in the toilet. *See* Hr'g Tr. at 108-09.

exception to the Fourth Amendment's warrant requirement.[2] ECF No. 18 at 6-8. On the other hand, Defendant contends that the search of the bag was illegal because the bag was not within his immediate control and should not be based on a search incident to Ms. Bracey's arrest.[3] *See* ECF No. 20 at 3-8. Having reviewed the parties' filings and the testimony at the hearing, the Court finds that the search was not a proper search incident to a lawful arrest.

"It is well settled that a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment." *United States v. Currence*, 446 F.3d 554, 556 (4th Cir. 2006) (quoting *United States v. Robinson*, 414 U.S. 218, 224 (1973)). A search incident to a lawful arrest is an exception to the warrant requirement to "prevent the concealment or destruction of evidence" and to "remove any weapons that the [arrestee] might seek to use in order to resist arrest or effect his escape." *Arizona v. Gant*, 556 U.S. 332, 339 (2009). Officers have authority to search a person when officers have probable cause to make a lawful custodial arrest. *Currence*, 446 F.3d at 556-557. A search incident to arrest may extend not only to the person of the arrestee, but to any area "within his immediate control," including "the area from within which [the arrestee] might gain possession of a weapon or destructible evidence." *United States v. Baker*, 719 F.3d 313, 316 (4th Cir. 2013); *see also Currence*, 446 F.3d at 557 (stating that the area within a person's immediate control may include both open and closed spaces as well as locked items). Officers may also remove a suspect from the container to be searched in order to alleviate officers' safety concerns before conducting the search. *United States v. Han*, 74 F.3d 537, 542 (4th Cir. 1996).

---

[2] The plastic bag contained a jacket and the jacket contained the firearm. *See* Hr'g Tr. at 56, 82-83.
[3] As the Court noted at the hearing, Ms. Bracey identified the bag as "our stuff," meaning that it belonged to her and to the Defendant. *See* Hr'g Tr. at 71, 95, 100. Therefore, because there was probable cause to arrest Ms. Bracey, officers could conduct a search incident to her arrest if executed properly.

7

In this case, because of the temporal nature of the search, and the proximity of the bag to Ms. Bracey, the search cannot appropriately be categorized as a search incident to a lawful arrest. At the hearing, the Court heard testimony regarding the bag's proximity to the suspects. For example, Officer Dipentima testified on direct examination that the bags were never out the reach of Ms. Bracey and Defendant, but on cross examination testified that they were:

### A. DIPENTIMA – DIRECT

Q. Were any of their bags ever taken out of the room and put out of their reach?
A. No.

Q. Were the bags ever locked up anywhere where the suspects would not be able to get to them?
A. No.

### A. DIPENTIMA – CROSS

Q. But the bags were moved outside of Mr. Seay's reach, correct?
A. Yes.

Q. Outside of Ms. Bracey's reach, correct?
A. Yes.

*See* Hr'g Tr. at 33, 39.

The Court also heard testimony from Officer Lucy that the bags were out of reach of Ms. Bracey and the Defendant, but that they could have gained access to them because they were free to move around:

### D. LUCY - DIRECT

Q. Now, even with that move, Officer, was there ever a point in this entire encounter where the bags were placed somewhere where it would have been impossible for the suspects to reach them?
A. No.

Q. And so just to be clear, were there times during this

8

> encounter where the bags were out of reach of the suspects in that way, where they would have to take some steps toward them?
> A. Correct. They were out of reach but those individuals, because they were free to move around, could have gained access to those bags.

*See* Hr'g Tr. at 78.

Given these various accounts, the Court is not persuaded that the bag was within the immediate control of either Ms. Bracey or the Defendant. Indeed, evidence suggests that at most, Ms. Bracey and Defendant could have gain accessed to the bag because they were free to move around. But, given the fact that the Court also heard testimony that officers did not restrain or handcuff either Ms. Bracey or the Defendant during the entire encounter, sheds doubt on the Government's argument that the search was conducted incident to an arrest. On the contrary, the principle purposes of a search incident to arrest are to "prevent the concealment or destruction of evidence" and to "remove any weapons that the [arrestee] might seek to use in order to resist arrest or effect his escape." *Gant*, 556 U.S. at 339. The Court is not convinced that officers were concerned that Ms. Bracey or the Defendant could access the bag to destroy evidence, affect their escape, or access a weapon to harm officers, where the bag was moved away from the suspects, and where the suspects were never restrained or handcuffed until they were formally arrested. *See* Hr'g Tr. at 39-40, 67-68 (testimony from officers that the bag was moved from the living room area and put on the bed prior to the search); *Id.* at 62, 69, 77 (testimony that neither Ms. Bracey or Defendant were handcuffed or restrained during the investigation); *Id.* at 86, 119, 127 (testimony and argument that the encounter and investigation lasted between 40 to 50 minutes and up to an hour).

In conclusion, "on a motion to suppress, the credibility of the witness and the weight to be given the evidence, together with the inferences, deductions and conclusions to be drawn from

9

the evidence, are all matters to be determined by the trial judge." *United States v. McKneely*, 6 F.3d 1447, 1452-53 (10th Cir. 1993). Given the parties' arguments, and the testimony at the hearing, the Court finds that the search cannot appropriately be categorized as a search incident to a lawful arrest. However, although the search violated the Fourth Amendment, the Court finds that the firearm is still admissible because it would have been inevitably discovered by an inventory search.

**4. Inevitable Discovery Doctrine**

Generally, if a search violates the Fourth Amendment, "the fruits thereof are inadmissible under the exclusionary rule, a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect." *United States v. Doyle*, 650 F.3d 460, 466 (4th Cir. 2011) (quoting *United States v. Calandra*, 414 U.S. 338, 348 (1974) (internal quotations omitted)). However, because exclusion is so drastic a remedy, it represents a "last resort" and is therefore subject to certain exceptions. *United States v. Stephens*, 764 F.3d 327, 335 (4th Cir. 2014). The inevitable-discovery doctrine constitutes one such exception and allows the government to use information obtained from an otherwise unreasonable search if it can establish by a preponderance of the evidence that law enforcement would have "ultimately or inevitably" discovered the evidence by "lawful means." *Nix v. Williams*, 467 U.S. 431, 444 (1984). "Lawful means" includes an inevitable search falling within an exception to the warrant requirement, such as an inventory search, that would have inevitably uncovered the evidence in question. *United States v. Allen*, 159 F.3d 832, 841 (4th Cir. 1998).

The "inventory exception" is a recognized exception to the warrant requirement. *United States v. Banks*, 482 F.3d 733, 738–39 (4th Cir.2007) (citing *South Dakota v. Opperman*, 428 U.S. 364, 374–76, (1976)). For the inventory search exception to apply, the search must have

"be[en] conducted according to standardized criteria," such as a uniform police department policy, ... and performed in good faith .... "The existence of ... a [standardized criteria] may be proven by reference to either written rules and regulations or testimony regarding standard practices." *United States v. Matthews*, 591 F.3d 230, 235 (4th Cir. 2009) (internal citations omitted).

Considering the evidence and testimony presented, the Court finds that discovery of the firearm was inevitable because officers would have conducted an inventory search of the bag that contained the firearm. At the hearing, the Court heard testimony regarding the Hampton Police Department's procedure for conducting an inventory search of an arrestee's personal belongings:

### A. DIPENTIMA – EXAMINATION BY COURT

Q. We have had some testimony about two bags that are involved here. . .
In those instances where you have arrested people with bags and et cetera, what do you do with the property that they have when you arrest them?

A. It's with our policy, with our division policy, that we will search those bags if we do search incident to arrest to make sure there's that nothing illegal or anything like that, and that way we pertain to what's in those bags and that is what is their property.

Q. What happens when you don't search the bags when you have them in your possession?

A. It's going to be searched regardless, whether at lockup or if it's an immense amount of property we tag it into our Evidence and Property for safekeeping and it still needs to be searched.

Q. And when you search the bag at lockup, you don't go get a search warrant, do you?
A. No.

Q. You do an inventory?
A. Yes.

11

*See* Hr'g Tr. at 50-51.

The Court also heard testimony from Officer Lucy that the bag would have been searched prior to Ms. Bracey being processed at the police station:

> **D. LUCY - DIRECT**
>
> Q. So what was going to happen to this bag once Ms. Bracey says "it's ours" and she is going to get arrested?
>
> A. It would have come with her to lockup and, again, I would have searched through the items prior to lockup, that way none of the illegal materials would have gone into lockup.

*Id.* at 72.

Further testimony confirmed that even if Ms. Bracey insisted that the bag belonged to Defendant, discovery of the firearm was unavoidable and certain:

> **D. LUCY - DIRECT**
>
> Q. Is there ever a case where an arrestee may have a friend or an associate present and say, "Well, no, send it back with them, I don't want it coming with me to the station?" . . .
>
> A. In that case, we verify that they wish to release it to that individual. We fill out what's called an FI card on the individual that we are releasing it to and we document what property we are releasing to that other individual . . .
>
> Q. And when you say "document what property," what exactly does that entail when it's a container with multiple items in it?
>
> A. In this case with our body cameras on, we will verbally state what those items are. We will then ask for each individual item if that is what they want to give to the other party that is there.
>
> Q. Is that the standard practice for all arrests when that comes up?
>
> A. That is an option. It's up to officer discretion.

12

> Q. And what's the purpose of that policy?
>
> A. The purpose of that is items at lockup that aren't allowed such as cigarettes, lighters, et cetera, may be released to a party, as well as credit cards, IDs, anything like that that they may want a significant other or an individual to have while they're in lockup.
>
> Q. In cases where there's evidence a firearm may be present in the belongings, would that be a factor officers consider in their discretion of whether to catalog the items in that way?
>
> A. Any type of material like that, we would have to maintain control of; we cannot release a firearm to another individual.

*Id.* at 72-73.

The Court finds the testimonies of Officer Dipentima, a Master Police Officer, and member of the force for 18 years, and Officer Lucy, a patrol officer for five years, credible. *See id.* at 4, 51-52. Accordingly, the Court finds that pursuant to department policy, an inventory search would have been conducted and the firearm inevitably discovered. *See United States v. Allen*, 159 F.3d 832, 838-39 (4th Cir. 1998) (holding that whether law enforcement would have inevitably discovered the evidence by lawful means is a question of fact, and the trial court is given great deference in this regard).

### B. Whether Defendant's Statements Following Discovery Of The Firearm Should Be Suppressed

Defendant also moves the Court to suppress the statements he made after the firearm was discovered. ECF No. 17 at 1. He argues that because the search was unconstitutional, the Court should suppress any evidence derived therefrom as the "fruit of the poisonous tree." *See id.* In opposition, the Government argues that even if the search of the bag violated the Fourth Amendment, the evidence, including Defendant's statements, should not be suppressed. ECF No.

18 at 11. The Government contends that officers administered Miranda warnings, considered whether a warrant was required, and ultimately took reasonable steps out of legitimate safety concerns because they believed a firearm was present. *Id.* at 11-13. As such, the Government insists that the conduct here is not "culpable enough to be worth the price" of excusing Defendant's conduct. *Id.* at 11.

The Supreme Court created the exclusionary rule, which "bars the prosecution from introducing evidence obtained by way of a Fourth Amendment violation, " *Davis v. United States*, 564 U.S. 229, 231-32 (2011), and applies to "evidence obtained during illegal police conduct," as well as "evidence that is the indirect product of the illegal activity," *United States v. Oscar-Torres*, 507 F.3d 224, 227 (4th Cir.2007) (citing *Mapp v. Ohio*, 367 U.S. 643, 655 (1961), and *Wong Sun v. United States*, 371 U.S. 471, 488 (1963)). Relatedly, under the "fruit of the poisonous tree" doctrine, derivative evidence, such as physical evidence, a confession, or the testimony of a witness, must be suppressed as "fruit of the poisonous tree" if it was discovered by exploiting an illegal search. *Wong Sun*, 371 U.S. at 488.

But, "[e]xclusion exacts a heavy toll on both the judicial system and society at large," because "[i]t almost always requires courts to ignore reliable, trustworthy evidence." *Davis*, 564 U.S. at 237. As a result, the exclusionary rule calls for a "balancing approach," which entails weighing the deterrent effect of suppression against the costs of exclusion, on a case-by-case basis. *United States v. Leon*, 468 U.S. 897, 909 (1984). To warrant exclusion, the "deterrence benefits of suppression must outweigh its heavy costs." *Davis*, 564 U.S. at 237. Central to the question of suppression is "the culpability of the law enforcement conduct." *Herring v. United States*, 555 U.S. 135, 143 (2009). "[E]vidence should be suppressed 'only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that

14

the search was unconstitutional under the Fourth Amendment.'" *Illinois v. Krull*, 480 U.S. 340, 348–49 (1987) (quoting *United States v. Peltier*, 422 U.S. 531, 542 (1975)).

In this case, the statements Defendant made after the firearm was discovered stem from an unlawful search incident to arrest. *See supra* Section III, A.3. Indeed, even if officers completed an inventory search, they would not have been questioning Defendant about a firearm which they had not yet discovered. While this fact certainly favors excluding Defendant's subsequent statements as the "fruit of the poisonous tree," the Court must still weigh the deterrent effect of suppression against the costs of exclusion. *See Leon*, 468 U.S at 909.

Here, officers had ample opportunity to comply with the Fourth Amendment. Officers could have performed a lawful search incident to arrest or sought a warrant to search the bag. The Court also heard testimony that officers contemplated whether a warrant was required to search the bag. *See* Hr'g Tr. at 84. At the very least, such evidence suggests that law enforcement had "knowledge or may properly be charged with knowledge, that the search [may have been] unconstitutional under the Fourth Amendment." *Krull*, 480 U.S. 340 at 348–49 (alteration in original) (internal quotations and citations omitted). Moreover, the traditional concerns of exclusion — "ignor[ing] reliable, trustworthy evidence bearing on guilt or innocence," *Davis*, 564 U.S. at 237, is not at issue here because the Court did not exclude the discovered firearm. Balancing all these factors, the Court finds that the deterrent benefits of suppression outweigh any heavy costs of exclusion. Accordingly, Defendant's subsequent statements following discovery of the firearm are inadmissible.

## IV. CONCLUSION

For the reasons stated on the record and discussed above, Defendant's Motion to Suppress is **DENIED IN PART AND GRANTED IN PART**. The firearm is admissible, but any statements Defendant made subsequent to the discovery of the firearm are inadmissible.

The Court **DIRECTS** the Clerk to send a copy of this Order to Defendant and the United States Attorney.

**IT IS SO ORDERED.**

Norfolk, Virginia
April 4, 2018

/s/
Raymond A. Jackson
United States District Judge